No. 21-10233

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,
**Plaintiff-Appellant,**


v.


GUSTAVO CARRILLO-LOPEZ,
**Defendant-Appellee.**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

---

BRIEF FOR *AMICUS CURIAE*
IMMIGRATION REFORM LAW INSTITUTE
IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL

---

Christopher J. Hajec
Gina M. D'Andrea
Immigration Reform Law Institute
25 Massachusetts Ave. NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorneys for *Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the FEDERAL RULES OF APPELLATE PROCEDURE,

*amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.


DATED: November 24, 2022                Respectfully submitted,

                                        s/ *Christopher J. Hajec*
                                        Christopher J. Hajec
                                        Gina M. D'Andrea
                                        Immigration Reform Law Institute
                                        25 Massachusetts Ave NW, Suite 335
                                        Washington, DC 20001
                                        Telephone: (202) 232-5590

                                        Attorneys for *Amicus Curiae*

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ..................................................................................iv

**IDENTITY AND INTERESTS OF AMICUS CURIAE**....................................1

**SUMMARY OF THE ARGUMENT** ................................................................1

**ARGUMENT** ........................................................................................................2

   **I.**   **Section 1326 is subject to rational basis review, which it easily withstands.** ........................................................................................4

     **A.**  **Due to Congress's plenary power over immigration, the court is not permitted to inquire into legislative motives of immigration laws.** ..............4

     **B.**  **There is no equal protection violation because § 1326 passes the rational basis test.** ......................................................................9

   **II.**  **Even if *Arlington Heights* is the correct standard, there is still no equal protection violation.** ..............................................................12

**CONCLUSION** ...................................................................................................16

**CERTIFICATE OF COMPLIANCE** ...............................................................17

**CERTIFICATE OF SERVICE** .........................................................................18

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Abbott v. Perez*, 138 S. Ct. 2305 (2018) .................................................................14

*Almendarz-Torres v. United States*, 523 U.S. 224 (1998) ....................................11

*Boutilier v. INS*, 387 U.S. 118 (1967) .....................................................................4

*Brice v. Pickett*, 515 F.2d 153 (9th Cir. 1975) ........................................................4

*Dent v. Sessions*, 900 F.3d 1075 (9th Cir. 2018). ....................................................9

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020)..13, 15

*Fiallo v. Bell*, 430 U.S. 787 (1977) .........................................................................5

*Galvan v. Press*, 347 U.S. 522 (1954). ................................................................4, 5

*Harris v. McRae*, 448 U.S. 297 (1980) ..................................................................12

*Heller v. Doe*, 509 U.S. 312 (1993)..............................................................8, 9, 10

*Hernandez-Mancilla v. Holder*, 633 F.3d 1182 (9th Cir. 2011) .............................6

*Hunter v. Underwood*, 471 U.S. 222 (1985)....................................................14, 15

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) ........................................................5

*Kleindienst v. Mandel*, 408 U.S. 753 (1972) ........................................................4, 6

*Ledezma-Cosino v. Sessions*, 857 F.3d 1042 (9th Cir. 2017).............................6, 9

*Lem Moon Sing v. United States*, 158 U.S. 538 (1895) ...........................................5

*Mathews v. Diaz*, 426 U.S. 67 (1976)..................................................................6, 7

*McGowan v. Maryland*, 366 U.S. 420 (1961) ........................................10

*Mobile v. Bolden*, 446 U.S. 55 (1980) ................................................14

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ................................................8

*Plyler v. Doe*, 457 U.S. 202 (1982) ...................................................8, 9

*Shaughnessy v. Mezei*, 345 U.S. 206 (1953) ...........................................5

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) .........................9

*Sudomir v. McMahan*, 767 F.2d 1456 (9th Cir. 1985) ..............................8

*Taniguchi v. Schultz*, 303 F.3d 950 (9th Cir. 2002) ................................5

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) ............................................7

*United Sates v. O'Brien*, 391 U.S. 367 (1968) ......................................14

*United States Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973). ...........11

*United States v. Ayala-Bello*, 995 F.3d 710 (9th Cir. 2021)....................7

*United States v. Barajas-Guillen*, 632 F.2d 749 (9th Cir. 1980)..........5, 8

*United States v. Cupa-Guillen*, 34 F.3d 860 (9th Cir. 1994)..................5

*United States v. Hernandez-Guerrero*, 147 F.3d 1075 (9th Cir. 1998) ............10, 11

*United States v. Mendoza-Lopez*, 481 U.S. 828 (1987) .........................16

*United States v. Osorto*, 995 F.3d 801 (11th Cir. 2021) ........................10

*Vill. of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252 (1977). 2, 7, 12, 13

*Washington v. Davis*, 426 U.S. 229 (1976) .........................................12

**<u>Statutes</u>**

8 U.S.C. § 1326 ................................................................................................2

Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7345, 102 Stat. 4181........13

Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322,

    108 Stat. 1796 .....................................................................................13

**<u>Other Authorities</u>**

S. Rep. No. 70-1456 (Jan. 17, 1929) ....................................................................11

## IDENTITY AND INTERESTS OF *AMICUS CURIAE*[1]

The Immigration Reform Law Institute ("IRLI") is a nonprofit 501(c)(3) public interest law firm incorporated in the District of Columbia. IRLI is dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens and lawful permanent residents, and to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus* briefs in important immigration cases, including *Trump v. Hawaii*, 138 S. Ct. 2392 (2018); *United States v. Texas*, 136 S. Ct. 2271 (2016); and *Arizona Dream Act Coal. v. Brewer*, 818 F.3d 101 (9th Cir. 2016). For more than twenty years, the Board of Immigration Appeals has solicited *amicus* briefs drafted by IRLI staff from IRLI's parent organization, the Federation for American Immigration Reform, because the Board considers IRLI an expert in immigration law. For these reasons, IRLI has a direct interest in the issues here.

## SUMMARY OF THE ARGUMENT

The District Court erred when it granted Defendant-Appellee's motion to dismiss his indictment for criminal reentry under 8 U.S.C. § 1326 because it applied the wrong standard to its review of the statute. Due to Congress's plenary power

---

[1] The parties have consented in writing to the filing of this *amicus* brief. This brief was not written in whole or in part by counsel for any party, and no person or entity other than *amicus*, its members, and its counsel has made a monetary contribution to the preparation and submission of this brief.

over immigration matters, and because groups of aliens, like alienage itself, are not suspect classifications, such challenges are subject to rational basis review. Because a rational basis for § 1326 can easily be discerned, it does not violate equal protection.

The District Court, nevertheless, applied the analysis set forth by the Supreme Court in *Vill. of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252 (1977) ("*Arlington Heights*"). Even if analysis under *Arlington Heights* was proper, the District Court misapplied the test. The District Court focused on the first criminal reentry statute, originally enacted in 1929, finding that the crime of illegal reentry was motivated by an intent to discriminate against aliens from Latin American, and that this discriminatory intent, though not again evidenced or even mentioned, tainted the current iteration of the law. Evidence of discrimination in 1929 is insufficient to find an equal protection violation, however. *Arlington Heights* requires contemporaneous evidence of discriminatory intent, and because the criminal reentry provision has been amended numerous times by subsequent congresses since 1929, evidence of racial motivation in the 1920s is irrelevant to the inquiry.

## **ARGUMENT**

The Immigration and Nationality Act ("INA") includes a provision, 8 U.S.C. § 1326, that establishes criminal penalties for aliens who have been deported and

subsequently reenter the United States illegally. These criminal penalties apply to "any alien who (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter (2) enters, attempts to enter, or is at any time found to be in the United States" without the prior consent of the Attorney General or proof that such consent was not required. 8 U.S.C. § 1326(a). The statute also provides criminal penalties for aliens who reenter illegally after having been deported for certain enumerated reasons, including removal after conviction for multiple misdemeanors, an aggravated felony, or certain security-related reasons. 8 U.S.C. § 1326(b). Criminal aliens who were deported prior to completion of their prison term must complete such term in addition to the statutory penalties. 8 U.S.C. § 1326(c). Section 1326 protects due process by providing an opportunity for collateral attack of the underlying order of removal in cases of fundamental unfairness. 8 U.S.C. § 1326(d). Congress enacted § 1326 as an enforcement mechanism for final orders of removal to deter aliens who have been deported from illegally reentering the country.

The District Court erred both by not scrutinizing this section under the rational basis test and, assuming *arguendo* that the heightened scrutiny it did apply was appropriate, by applying it in a faulty manner. Courts are not to search Congress's motives in exercising its plenary power over immigration, and groups of aliens, any

more than aliens generally, are not protected classes. And the District Court erred by imputing the motives of some in Congress for a different act passed many years before § 1326 was enacted to whole future Congresses that passed and amended § 1326 without evincing, or even mentioning, such motives.

I. **Section 1326 is subject to rational basis review, which it easily withstands.**

    A. **Due to Congress's plenary power over immigration, the court is not permitted to inquire into legislative motives of immigration laws.**

Both this Court and the U.S. Supreme Court have consistently recognized the plenary power of Congress over immigration regulation in the United States. *See, e.g., Boutilier v. INS*, 387 U.S. 118, 123 (1967) ("It has long been held that Congress has plenary power to make rules for the admission of aliens and to exclude those characteristics which Congress has forbidden."); *Kleindienst v. Mandel*, 408 U.S. 753, 765-66 (1972) ("The Court without exception has sustained Congress' plenary power" over immigration); *Brice v. Pickett*, 515 F.2d 153, 154 (9th Cir. 1975)(citing *Galvan v. Press*, 347 U.S. 522 (1954)) ("Congress has plenary power over the admission and expulsion of aliens. An alien resident in the United States may be deported for any reason which makes his residence here not in the best interest of the government, as determined by Congress."). In fact, "the power to expel or

exclude aliens [is] a fundamental sovereign attribute" that the Supreme Court has consistently upheld. *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953).

As the Supreme Court explained, the creation of immigration policy is "peculiarly concerned with the political conduct of the government[,]" and "the formulation of these [immigration] policies is entrusted exclusively to Congress." *Galvan v. Press*, 347 U.S. 522, 531 (1954). In order for Congress "[t]o implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after reentering." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). Accordingly, judicial review of actions authorized by Congress's inherent power over immigration is limited. *See Lem Moon Sing v. United States*, 158 U.S. 538, 547 (1895) ("The power of Congress to exclude aliens . . . or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy . . . enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications."); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("[I]t is important to underscore the limited scope of judicial inquiry into immigration legislation."); *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002) ("Congress' power over the expulsion and exclusion of aliens is very broad. As a result, judicial inquiry into immigration legislation is very limited.") (internal citations omitted); *United States v. Cupa-Guillen*, 34 F.3d 860, 862 (9th Cir. 1994) (quoting *United States v. Barajas-Guillen*, 632 F.2d 749,

752 (9th Cir. 1980)) ("[B]ecause of Congress' plenary power to control immigration, 'the scope of judicial inquiry into immigration legislation is exceedingly narrow.'").

As the Supreme Court explained in *Mandel*, courts are not required to delve into the motivations for immigration actions where there is "a facially legitimate and bona fide reason" for the challenged action. *Mandel*, 408 U.S. at 769, 770. Furthermore, this court "ha[s] consistently held . . . that ordinary rational basis review is the appropriate standard in the immigration context." *Ledezma-Cosino v. Sessions*, 857 F.3d 1042, 1049 (9th Cir. 2017).

The Supreme Court has likened immigration cases to political question cases, explaining that "[t]he reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by Congress or the President in the area of immigration and naturalization." *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976). Thus, courts must "review equal protection challenges to federal immigration laws under the rational basis standard and uphold them if they are rationally related to a legitimate government purpose." *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011) (internal citations and quotation marks omitted). Under this "rational-basis review, a statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Id*. Therefore, a facially neutral immigration law that serves a valid congressional purpose will be upheld. *See*

*Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018) (explaining that under the rational basis standard a law is valid where "it can reasonably be understood to result from a justification independent of unconstitutional grounds.").

The District Court ignored years of circuit and Supreme Court precedent when it applied the standard set forth in *Arlington Heights* instead of the rational basis review. Under *Arlington Heights*, "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266. Such analysis requires a much higher level of scrutiny than is permitted in the immigration context.

As this Court recently explained:

> [i]n simple terms, the right to equal protection ensures that everyone in a jurisdiction lives under the same laws. But of course, most laws differentiate in some fashion between classes of persons without violating that right. . . . The Constitution requires closer scrutiny only if the government's policy discriminates against a protected class or infringes on a fundamental right.

*United States v. Ayala-Bello*, 995 F.3d 710, 714 (9th Cir. 2021) (internal citations omitted). It is accepted that Congress makes laws for aliens that, if applied to citizens, would be unconstitutional. *See Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to its citizens."). Thus,

7

"a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of the treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993). *See also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("[T]his Court's cases are clear that unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.").

The District Court erred in holding that those Latin Americans to whom the reentry law is applied are part of a suspect class. 1-ER-9. Alienage is not a suspect classification. *Plyler v. Doe*, 457 U.S. 202, 223 (1982) ("Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a constitutional irrelevancy.") (internal quotation marks omitted); *Sudomir v. McMahan*, 767 F.2d 1456, 1464 (9th Cir. 1985) ("Federal classification based on alienage are subject to relaxed scrutiny."); *United States v. Barajas-Guillen*, 632 F.2d 749, 752 (9th Cir. 1980) (internal citation and quotation marks omitted) ("We have held that classifications among aliens made pursuant to the immigration laws need only be supported by some rational basis to fulfill equal protection guarantees."). It follows that subclasses of aliens sharing ancestral ties with groups of Americans are not suspect classifications, either, for it is inevitable

that classifications of aliens often will affect such subclasses differently. *See, e.g., Plyler*, 457 U.S. at 223 (applying the rational basis test to Texas's denial of free public education to children of illegal aliens in a class action-suit brought by "school-age children of Mexican origin residing in Smith County, Texas."). In sum, in light of Congress's inherent, plenary authority over aliens seeking to enter the country, the District Court should have reviewed the statute under the rational basis standard.

### B. There is no equal protection violation because § 1326 passes the rational basis test

As explained above, for a challenged law "[t]o survive rational basis review [the] statute must be rationally related to a legitimate government purpose." *Dent v. Sessions*, 900 F.3d 1075, 1082 (9th Cir. 2018). *See also Ledezma-Cosino*, 857 F.3d at 1048 (explaining that "rational basis review, which does not require a court to account for all of a statute's text, just whether the statute is rationally related to a legitimate government interest."); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1137 (9th Cir. 2009) ("Under rational basis review, the rules will be upheld if they are rationally related to a legitimate government purpose.").

Furthermore, "rational basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller*, 509 U.S. at 319 (quoting *FCC v. Beach Comm., Inc.*, 508 U.S. 307, 313 (1993). According to the Supreme Court, "[a] statute is presumed constitutional, and 'the burden is on the one attacking the legislative arrangement to negative every

conceivable basis which might support it.'" *Heller*, 509 U.S. at 320 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). *See also McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961) (explaining that "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.").

The courts have recognized that the government has a strong interest in the enforcement of final orders of removal as well as the deterrence of criminal reentry, both rational reasons for the enactment of § 1326. The Eleventh Circuit, discussing § 1326(b), explained that the statute reflects "two policies that Congress advanced . . . (1) deterrence of those who have committed qualifying crimes from illegally reentering the United States; and (2) the judgment that unlawful reentry into the United States after deportation following a qualifying conviction is a more serious crime than basic illegal reentry." *United States v. Osorto*, 995 F.3d 801, 807 (11th Cir. 2021) (internal citations omitted).

This court has acknowledged that "[t]he text of § 1326 plainly reveals its immigration-related purpose. By threatening with criminal prosecution any alien found in the United States who has previously been 'excluded, deported, or removed,' Congress sought . . . to give teeth to civil immigration statutes and to ensure compliance with civil deportation orders." *United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1078 (9th Cir. 1998). The *Hernandez-Guerrero* court

explained that "§ 1326 is a necessary piece of the immigration-regulation framework; without the threat of criminal prosecution it provides, Congress's immigration-regulation authority would be fatally undermined—all bark and no bite." *Id*.

The criminal penalties for illegal reentry should be upheld because they are "[]relevant to the stated purposes . . . and . . .rationally . . . further . . . legitimate governmental interest." *United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 529 (1973). The rational connection between § 1326 and the government's legitimate immigration interests are clear—criminal penalties achieve Congress' deterrent and enforcement priorities with respect to illegal aliens. This is evidenced by the fact that prior to the criminalization of reentry after removal, the only remedy the government had for these repeat offenders was to continually deport them when found in the U.S. *See* S. Rep. No. 70-1456, at 1 (Jan. 17, 1929) (explaining that "there is no provision of law under which a penalty, other than repeated deportation, can be imposed on aliens who have been expelled from the United States and who reenter the country unlawfully."). The report further acknowledged that "in some instances such aliens have been deported" and illegally returned to the U.S. multiple times. *Id*. The Supreme Court has also acknowledged that addressing such repeat offenders is a purpose of § 1326. *Almendarz-Torres v. United States*, 523 U.S. 224, 230 (1998) ("[W]e note that the relevant statutory subject matter is recidivism.").

11

Section 1326 should be upheld because it provides a rational mechanism to achieve Congress's goals of enforcement and deterrence.

## II. Even if *Arlington Heights* is the correct standard, there is still no equal protection violation.

As the Supreme Court explained, "the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). This protection, however, "prohibits only purposeful discrimination." *Harris v. McRae*, 448 U.S. 297, 323 n.26 (1980). Thus, a party bringing an equal protection challenge must establish that the challenged law was motivated by the intent to discriminate and that the law resulted in a disparate impact on a specific group. *Washington*, 426 U.S. at 239 (explaining that a law will not be unconstitutional "*solely* because it has a racially disproportionate impact."). The *Arlington Heights* court explained that "[d]isproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights*, 429 U.S. at 264-65. Thus, "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id*. at 266.

12

*Arlington Heights* provides non-exhaustive examples other than disparate impact that may establish discriminatory intent, including "[t]he historical background of the decision," "[t]he specific sequence of events leading up to the challenged decision," and "[d]epartures from the normal procedural sequence." *Id*. at 266-68. Finally, the court pointed out that "[t]he legislative or administrative history may be highly relevant, especially where there are contemporaneous statements" available. *Id*. at 268. Such evidence is relevant so long as it is from the same time as the challenged law.

The District Court erred because it based its finding of discriminatory intent on its analysis of the motives behind the first criminal reentry statute passed in 1929. This analysis ignores a key word in the *Arlington Heights* framework— "contemporaneous." The evidence supplied regarding passage of the 1929 law is "remote in time and made in unrelated contexts" and therefore "do[es] not qualify as contemporary statements probative of the decision at issue." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 (2020). Section 1326 was first enacted in 1952 and has been amended by congress several times over the last fifty years. In fact, many of the amendments to § 1326 were included in larger crime reform legislation such as the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7345, 102 Stat. 4181, or the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796. This reflects Congress's continued

13

purpose of enforcement and deterrence of illegal reentry and not racial discrimination.

The Supreme Court has held that "past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." *Mobile v. Bolden*, 446 U.S. 55, 74 (1980). Additionally, subsequent Congresses were not "obligated to show that [they] had 'cured' the unlawful intent that the court attributed to the" 1929 congress. *Abbott v. Perez*, 138 S. Ct. 2305, 2313 (2018). Therefore, "the presumption of legislative good faith [is] not changed by a finding of past discrimination." *Id.* at 2324. Furthermore, it would be absurd to require Congress to repudiate all potentially discriminatory intentions reflected in the congressional record in order to "cleanse" a statute of its past discrimination.

Additional problems lie in ascertaining the exact motivation of the challenged legislation. The Supreme Court has warned of "the difficulties in determining the actual motivations of the various legislators that produced a given decision." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985). A reviewing court should be wary when "asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it. What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it[.]" *United Sates v. O'Brien*, 391 U.S. 367, 383-384 (1968). It is clearly improper for the court to assign the improper statements of

14

some congressman in the 1920s to the legislators who passed later iterations of the criminal reentry statute.

Furthermore, the District Court below failed to give proper weight to the fact that "because Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsized share of the" aliens prosecuted under § 1326. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915-16 (2020). As the Supreme Court explained, allowing a finding of disparate impact on this fact alone would mean "virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Id.*

For the District Court, the determination that the alleged discrimination from 1929 tainted all subsequent versions of § 1326, "shift[ed] [the burden of proof] to the law's defenders to demonstrate that the law would have been enacted without" the discriminatory motivation. *Hunter*, 471 U.S. at 228. Even if that were so, that burden would be met. As explained above, criminalizing illegal reentry serves as both a deterrent and an enforcement mechanism that Congress has repeatedly affirmed. Additionally, Congress has made amendments to the statute that addressed constitutional issues raised by the Supreme Court. Congress enacted § 1326(d) following *United States v. Mendoza-Lopez* to provide for collateral attack in situations of fundamental unfairness. The Court explained that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense

15

must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987). These motivations are fully sufficient to show that Congress would have reenacted this statute in the absence of any purported discriminatory purpose.

## CONCLUSION

For the foregoing reasons, the judgement of the court below should be reversed.

DATED: November 24, 2021          Respectfully submitted,

/s *Christopher J. Hajec*
Christopher J. Hajec
Gina M. D'Andrea
Immigration Reform Law Institute
25 Massachusetts Ave NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorneys for *Amicus Curiae*

16

## **CERTIFICATE OF COMPLIANCE**

1. The foregoing brief complies with the type-volume limitation of FED. R. APP. P. 29(a)(5) because:

This brief contains 3,602 words, including footnotes, but excluding parts of the brief exempted by FED. R. APP. P. 32(f).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.


DATED: November 24, 2021          Respectfully submitted,

                                        /s *Christopher J. Hajec*
                                        Christopher J. Hajec
                                        Gina M. D'Andrea
                                        Immigration Reform Law Institute
                                        25 Massachusetts Ave NW, Suite 335
                                        Washington, DC 20001
                                        Telephone: (202) 232-5590

                                        Attorneys for *Amicus Curiae*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 24, 2021, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

<u>/s *Christopher J. Hajec*                    </u>
Christopher J. Hajec

18