No. 21-10233
_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

GUSTAVO CARRILLO-LOPEZ,

*Defendant-Appellee*.

_____

On Appeal from the United States District Court
for the District of Nevada
Case No. 3:20-cr-26 (Du, C.J.)
The Honorable Miranda M. Du

_____

**BRIEF OF AMICI THE CENTER FOR IMMIGRATION LAW AND POLICY, THE AOKI CENTER FOR CRITICAL RACE AND NATION STUDIES, AND THE SOUTHERN POVERTY LAW CENTER**

*Filed In Support of Defendant-Appellee and Affirmance*

_____

Ahilan Arulanantham
UCLA School of Law
385 Charles E. Young Dr. E.
Los Angeles, CA 90095
(310) 825-1029

Eric Fish
Acting Professor
UC Davis School of Law
400 Mark Hall Dr.
Davis, CA 95616
*Of Counsel*

Yaman Salahi
EDELSON PC
150 California St., 18th Floor
San Francisco, CA 94111
(415) 212-9300
*Counsel for Amici*

ii

# TABLE OF CONTENTS

**STATEMENT OF INTEREST** ...................................................................................1

**ARGUMENT** ..........................................................................................................1

**CONCLUSION** .......................................................................................................7

...

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Abbott v. Perez*,
 138 S. Ct. 2305 (2018) ............................................................................. 3, 4, 6

*Finley v. United States*,
 490 U.S. 545 (1989) ...................................................................................... 1, 2

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
 353 U.S. 222 (1957) ......................................................................................... 2

*Hunter v. Underwood*,
 471 U.S. 222 (1985) ...................................................................................... 3, 4

*United States v. Carrillo-Lopez*,
 68 F.4th 1133 (9th Cir. 2023) ............................................................... *passim*

*United States v. Hansen*,
 143 S. Ct. 1932 (2023) ...................................................................................... 5

*United States v. Nishiie*,
 996 F.3d 1013 (9th Cir. 2021) ......................................................................... 2

**Statutes**

8 U.S.C. §1326 ......................................................................................................... 6

Immigration Act of 1917,
 Pub. L. No. 64-301, § 4, 39 Stat. 874 (1917) .............................................. 5, 6

Immigration Act of 1918,
 Pub. L. No. 65-221, § 3, 40 Stat. 1012 (1918) ................................................ 6

Immigration and Nationality Act of 1952,
 8 U.S.C. § 1101 *et seq.* ................................................................................ 1, 4-7

**Misc. Authority**

S.Rep. No. 81-1515 (1950) ..................................................................................6, 7

Eric S. Fish, *Race, History, and Immigration Crimes*,
    107 Iowa L. Rev. 1051 (2022) ..................................................................5, 6

Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* (2012)............2

**STATEMENT OF INTEREST**

Amici hereby incorporate the statement of interest in their amicus brief on the merits. *See* Dkt. 17 at 1-2.

**ARGUMENT**

Amici support Appellee Carrillo Lopez and Appellant Rodrigues Barios's petitions for rehearing en banc for the reasons stated in both petitions. Amici write separately to make three additional points regarding the Panel's treatment of the 1929 statute, which independently warrants rehearing en banc. *See United States v. Carrillo-Lopez*, 68 F.4th 1133, 1150-51 (9th Cir. 2023).

*First*, the Panel's determination that the legislative intent behind the 1929 statute was irrelevant simply because the composition of the legislature that reenacted it had substantially changed contravenes longstanding doctrine governing the treatment of reenactments. *Id*. at 1150. "Under established canons of statutory construction, it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed." *Finley v. United States*, 490 U.S. 545, 554 (1989) (per Scalia, J.) (internal quotations omitted).

The Panel created conflict with a large body of law when it chose to ignore the evidence of discriminatory intent behind the 1929 statute in evaluating the 1952 reenactment. The Panel looked at the 1952 statute in a vacuum, requiring that

1

Defendants provide evidence of discriminatory intent on the part of that statute's drafters. However, where a later Congress reenacts an earlier statute, the longstanding default rule in the Supreme Court and this Court is that the legislative intent of the earlier Congress remains controlling absent some indication that the later Congress chose to reenact the statute for new reasons. Justice Scalia's description of the rule for the Court in *Finley, supra*, repeated a hornbook principle widely recognized by the Supreme Court and this Court both before and since. *See, e.g.*, *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 227 (1957) (revision and recodification splitting a single section into two separate sections did not alter the scope and purpose of venue provision in patent infringement cases) (cited in *Finley*); *United States v. Nishiie*, 996 F.3d 1013, 1026 (9th Cir. 2021) (citing *Fourco*, and holding that minor changes and re-ordering as part of larger recodification did not alter Congressional intent). *See also* Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* (2012) at 257 (Because such a "revision does not result from legislative reconsideration of the substance of codified statutes," "new language does not amend prior enactments unless it does so clearly") (collecting cases).

Thus, where the record indicates no reason for the new enactment, courts assume the old reasons continue to govern. The panel's contrary conclusion—that the change in composition of the legislature, coupled with the passage of time,

suffice to erase the original legislature's intent—is contrary to well-settled law governing the statutory interpretation of reenactments, and indeed unprecedented.

*Second*, the Panel grossly misconstrued *Abbott v. Perez*, 138 S. Ct. 2305 (2018) in a way that creates conflict with both that case itself and *Hunter v. Underwood*, 471 U.S. 222 (1985). *Hunter* held that where the "original enactment was motivated by a desire to discriminate . . . on account of race and the section continues to this day to have that effect . . . it violates equal protection." *Id*. at 233. It applied that rule to strike down an eighty-year-old disenfranchisement provision because it was motivated by race discrimination when originally enacted, even though it had been amended several times.

The Panel largely ignored *Hunter*, citing it only in passing, and instead relied on *Abbott*, claiming that *Abbott* rejected the argument that "a new enactment can be deemed to be tainted by the discriminatory intent motivating a prior act unless legislators expressly disfavor the prior act's racism." *Carrillo-Lopez*, 68 F.4th at 1151 (citing *Abbott*, 138 S. Ct. at 2325-26). But the Panel misconstrued *Abbott*. *Abbott* did *not* make that statement in the context of a legislature that had reenacted a prior discriminatory act. Rather, in *Abbott*, the legislature adopted an entirely new electoral map (indeed, one that had previously been imposed by a court in litigation). *Abbott* held that the legislature's earlier discriminatory intent in adopting a prior electoral map did not carry over to the new map. In contrast, here,

3

Congress re-enacted the same statute that had been previously adopted with discriminatory intent. The Panel relied on this out-of-context description of *Abbott* to conclude that "a legislature has no duty 'to purge its predecessor's allegedly discriminatory intent.'" *Carrillo-Lopez* 68 F.4th at 1151 (quoting *Abbott*, 138 S. Ct. at 2326). While that statement may be true in cases where the subsequent legislature is *not* reenacting substantially the same law as its predecessor, it is not the law in cases where, as here, the legislature *does* reenact the same law that was originally passed with discriminatory intent, without expressing any alternative rationale for the law. The Panel's decision to misapply *Abbott*'s rule to this context, where the legislature had reenacted a prior, discriminatory statute, is in plain conflict with *Hunter*.[1]

*Finally*, the Panel created still more conflict with the law governing reenactments when it stated that the 1952 law enacting the criminal illegal reentry statute was not a reenactment at all, but instead a "substantially different" enactment. *Carrillo-Lopez*, 68 F.4th at 1151. The Panel cited no opinion—and amici are aware of none—that treated modifications as minor as those at issue here

---

[1] The Panel's ruling on this point was also inconsistent with *Abbott* itself, which recognized that the prior legislature's intent remained relevant, though not dispositive, notwithstanding that the later legislature had adopted a substantially different electoral map. *Abbott*, 138 S. Ct. at 2327 (finding that "the intent of the 2011 Legislature" remains "relevant . . . to the extent" it supports an inference of discriminatory intent).

as sufficient to classify a statute as a new provision rather than a reenactment. Indeed, the Supreme Court just recently recognized, with respect to a different provision of the 1952 statute, that Congress "was engaged in a cleanup project, not a renovation," when it undertook its comprehensive recodification of the immigration laws in 1952. *United States v. Hansen*, 143 S. Ct. 1932, 1944 (2023).

To conclude otherwise, the Panel pointed first to its own characterization of the 1952 statute as "a broad reformulation of the nation's immigration laws." *Carrillo-Lopez*, 68 F.4th at 1151. But it cited nothing for its view of the 1952 statute as having enacted broad substantive changes, and that view is wrong. Just as the Supreme Court found in *Hansen*, the 1952 statute was a "cleanup project." As Professor Fish has explained, the 1952 law "largely preserved existing immigration policies, reorganizing and recodifying them into a modern legislative code." Eric S. Fish, *Race, History, and Immigration Crimes*, 107 Iowa L. Rev. 1051, 1098-99 (2022).

The Panel also asserted that the new law "incorporated provisions from three acts," referring to the fact that there were two other statutes that also criminalized illegal entry prior to 1952—one a misdemeanor targeting people deported for having engaged in prostitution with a maximum sentence of two years, and the other a felony targeting people deported for having been found to be anarchists with a maximum sentence of five years. *See* Immigration Act of 1917, Pub. L. No.

5

64-301, § 4, 39 Stat. 874, 878-79 (1917); *see also* Immigration Act of 1918, Pub. L. No. 65-221, § 3, 40 Stat. 1012 (1918); *Carrillo-Lopez*, 68 F.4th at 1147, 1151. The Panel relied on these repealed provisions to assert that the 1952 law combined these provisions when it "eliminated the three different criminal penalties" for illegal reentry in favor of a single penalty. *Carrillo-Lopez*, 68 F.4th at 1147.

But neither the Government nor any prior district court had ever before asserted that the new law combined these three provisions, rather than simply reenacting the prior general illegal reentry statute and repealing the other two, and for good reason: the Panel's explanation gets the enactment history wrong.[2] In fact, the 1952 statute carried forward *with no changes* the penalty contained in the 1929 reentry statute: a felony punishable by a maximum of 2 years and a fine of $1000. In passing the 1952 statute, Congress simply followed an earlier Senate Report's suggestion that the "act of March 4, 1929 . . . be reenacted to cover any and all deportations." Fish, *supra*, at 1100 (*citing* S. Rep. No. 81-1515, at 655 (1950)). As recommended, the 1952 statute "carried forward . . . and provide[d] for the same penalty," as that contained in the 1929 reentry statute. *Id*. at 1099-1100. The other

---

[2] The government cited the two other reentry statutes as evidence of a "substantive change" meriting the application of the presumption of legislative good faith in *Abbott*. Opening Brief for the United States, *United States v. Carrillo-Lopez*, 9th Cir., No. 21-10233, Dkt. 5 at 45. It did not argue that Section 1326 was not a reenactment of the 1929 statute, and made no reference to allegedly "different criminal penalties" that might have justified treating the 1952 statute as a wholly new enactment.

6

two provisions—governing people deported for prostitution and advocating anarchy—were simply repealed, not incorporated as part of any "substantial revisions and additions." *Carrillo-Lopez*, 68 F.4th 1151. In fact, Congress enacted only one substantive change to the illegal reentry statute in 1952. It added the "found in" element, which simply made it possible to prosecute the same crime throughout the country, rather than just in border districts.[3]

Thus, the Panel's conclusion that the 1952 provision "incorporated provisions from three acts and made substantial revisions," 68 F.4th at 1151, constitutes a serious misreading of the relevant statutory history on an issue of exceptional importance.

## CONCLUSION

For all these reasons, this Court should rehear this case sitting en banc.

Respectfully Submitted,

August 14, 2023                    /s/ Yaman Salahi

Yaman Salahi
ysalahi@edelson.com
EDELSON PC
150 California St., 18th Floor

---

[3] In addition to getting the statutory enactment history wrong in the course of advancing an argument the government did not make, the Panel's analysis entirely ignored the overwhelming evidence establishing that the purpose of the 1952 statute was to reenact the 1929 provision. Most obviously, it ignored the 1950 Senate Report, which recommended that the "act of March 4, 1929… be reenacted to cover any and all deportations." S. Rep. No. 81-1515 at 655 (1950).

7

San Francisco, CA 94111
(415) 212-9300
*Counsel for Amici*

Ahilan Arulanantham
aarulanantham@law.ucla.edu
UCLA School of Law
385 Charles E. Young Dr. E.
Los Angeles, CA 90095
(310) 825-1029
*Of Counsel*

Eric Fish
efish@ucdavis.edu
Acting Professor
UC Davis School of Law
400 Mark Hall Dr.
Davis, CA 95616
*Of Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August 2023, a true and correct copy of the foregoing was filed with the Clerk of the United States Court of Appeals for the Ninth Circuit via the Court's CM/ECF system, which will send notice of such filing to all counsel who are registered CM/ECF users.

/s/ Yaman Salahi

Yaman Salahi
*Counsel for Amici*

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 21-10233

I am the attorney or self-represented party.

**This brief contains** 1,694 **words, including** 0 **words** manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Yaman Salahi  **Date** August 14, 2022
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**  Rev. 12/01/22